IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KAYLA DREVENAK, as Next Friend of minor M.J. and on behalf of the estate of AMIR JOHNSON, DECEDENT, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. _____ JURY TRIAL DEMANDED |
| THE CITY OF VENTNOR CITY, NEW JERSEY, MICHAEL ARENA, PIERLUIGI MANCUSO, ROBERT SCARBOROUGH and JOHN DOE OFFICERS 1-10, | § § § § § | |
| Defendants. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Kaylor Drevenak, as Next Friend of M.J., the surviving minor son of Amir Johnson ("Johnson") deceased, and on behalf of the Estate of Amir Johnson, Deceased, complaining of Defendants the city of Ventnor City, New Jersey, more particularly the Ventnor Police Department ("VPD"), Michael Arena ("Arena"), Pierluigi Mancuso ("Mancuso"), Robert Scarborough ("Scarborough") and John Doe Officers 1-10, in their individual capacities and for cause would show the Honorable Court as follows:

Defendants Arena, Mancuso, Scarborough and John Doe Officers 1-10, contrary to their false statements, not facing an immediate threat of death or serious bodily injury, violated then thirty (30) year old Amir Johnson's ("Johnson") Fourth Amendment right to be free from excessive and deadly use of force. These violations were committed because of the policies and/or customs or lack thereof of the city of Ventnor City, New Jersey (the "City"). Specifically,

the municipal body has inadequate and unconstitutional policies and/or customs related to the use of excessive and deadly force during encounters with citizens suffering from a mental illness.

Plaintiff herein complies with the pleading requirements of FRCP Rule 8(a)(2) and the requirements of *Ashcroft v. Iqbal*, 556 U.S. 129 S.Ct. 1937, 1949 (2009) that "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

## I.

## NATURE OF THE ACTION

1.     This is an action brought by the Plaintiff against the city of Ventnor City, New Jersey, and Defendants Arena, Mancuso, Scarborough and John Doe Officers 1-10 for their use of excessive and deadly force resulting in the death of Johnson under the color of law, in violation of his individual rights under the Fourth Amendment of the United States Constitution and, consequently, in violation of his civil rights pursuant to 42 U.S.C. § 1983 and § 1985. Furthermore, Plaintiff M.J. is entitled to recover damages arising from the decedent's wrongful death as applied under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below and for their wrongful death cause of action.

2.     The Plaintiff alleges that Mayor Beth Holtzman ("Holtzman") and  Ventnor City Board of Commissioners ("Board of Commissioners"), the City's final policymakers for the VPD, vested with all powers of the City and with the determination of all matters of policy and its then Chief of Police, Douglas Biagi[1] ("Former Chief Biagi") (collectively referred herein as the "Policymakers"), vested with the authority for setting policies for Ventnor City Police

---

[1]     Joseph Fussner became Chief of Police, upon Chief Biagi's retirement, at the end of 2021.

Officers, had a duty, but failed to implement and enforce such policies, practices and procedures for VPD that respected Johnson's constitutional rights to protection and equal treatment under the law. The Policymakers implemented a use of force policy that is facially unconstitutional and failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts.

3.      The Policymakers' failure to implement the necessary policies and the (de facto) implementation of unconstitutional policies, including policies for use of force, use of deadly force and policies for dealing with mentally ill citizens, unnecessarily caused Johnson to die at the hands of police officers who engaged in the excessive and deadly use of force when Johnson did not pose an imminent threat to the officers or others, and in any event, there were reasonable alternatives to eliminate or alleviate the potential threat. Defendant City and its Policymakers' failure to implement the necessary policies and the implementation of facially unconstitutional policies deprived Johnson of his rights under the Constitution and caused him unwarranted and excruciating physical and mental anguish and eventually his death.  Defendants Arena, Mancuso, Scarborough and John Doe Officers 1-10 consciously disregarded the rights of Johnson, knowing that the Policymakers would ratify and/or approve of their actions.   For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers and compensation for damages.

## II.

## PARTIES

4.      Kaylor Drevenak, as Next Friend of M.J., is a citizen of the United States.  Kaylor Drevenak is the mother of M.J., Johnson's minor son.  Kaylor Drevenak as Next Friend of M.J.,

also brings this survival action on behalf of the Estate of Amir Johnson, under 42 U.S.C § 1983 and all other applicable laws complaining of the various acts listed below.

5.      Defendant, Ventnor City, is a municipality located in Atlantic County, New Jersey. The City exercises both legislative and executive powers to govern under the "Commission form of Government," or the Walsh Act, and consists of three Commissioners. The three elected commissioners are each assigned a department to oversee and choose one of their members to serve as mayor.[2]   Ventnor City, through its Mayor, Commissioners, City Administrator and then Chief Biagi, funds and operates VPD and is responsible for its policies, procedures, and customs, as well as the acts and omissions, challenged by this suit. VPD is also responsible for preventive, investigative, and enforcement services for all citizens of Ventnor City. All actions that form the basis of this lawsuit were performed pursuant to policies and procedures, customs and practices of Defendant, City. The City has a responsibility and duty to promulgate, implement, train, and enforce policies and procedures related to use of force and use of deadly force and to encounters with citizens who may be mentally ill that meet minimum constitutional and statutory requirements.  The City may be served with citation for service of process on Mayor Beth Holtzman, 6201 Atlantic Avenue, Ventnor City, New Jersey 08406 or wherever she may be found.

6.      Defendant, Michael Arena, upon information and belief, is a resident of Atlantic County, New Jersey, and, at all times material herein was a police officer allegedly acting in the course and scope of his employment for Ventnor City and VPD.  At all times relevant to this lawsuit, it was Officer Arena's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with VPD's rules, regulations,

---

[2]  *See*, https://www.ventnorcity.org/departments/staff_directory/Administration/.

PLAINTIFF'S ORIGINAL COMPLAINT – Page 4

policies and procedures, customs and/or practices.  Arena is being sued in this lawsuit in his individual capacity.  Defendant Arena may be served with citation at the Ventnor Police Department, 6201 Atlantic Avenue, Ventnor City, New Jersey 08406 or wherever he may be found.

7.      Defendant, Pierluigi Mancuso, upon information and belief, is a resident of Atlantic County, New Jersey, and, at all times material herein, was a police officer allegedly acting in the course and scope of his employment for Ventnor City and VPD.  At all times relevant to this lawsuit, it was Officer Mancuso's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with VPD's rules, regulations, policies and procedures, customs and/or practices.  Officer Mancuso is being sued in this lawsuit in his individual capacity.  Defendant Mancuso may be served with citation at the Ventnor Police Department, 6201 Atlantic Avenue, Ventnor City, New Jersey 08406 or wherever he may be found.

8.      Defendant, Robert Scarborough, upon information and belief, is a resident of Atlantic County, New Jersey, and, at all times material herein, was a police officer allegedly acting in the course and scope of his employment for Ventnor City and VPD.  At all times relevant to this lawsuit, it was Officer Scarborough's duty and responsibility to treat all persons in compliance with constitutional and statutory requirements and in compliance with VPD's rules, regulations, policies and procedures, customs and/or practices.  Officer Scarborough is being sued in this lawsuit in his individual capacity.  Defendant Scarborough may be served with citation at the Ventnor Police Department, 6201 Atlantic Avenue, Ventnor City, New Jersey 08406 or wherever he may be found.

9.      Defendants John Doe Officers includes police officers who were allegedly acting

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 5

in the course and scope of their employment for VPD.[3]  At all times relevant to this lawsuit, it was the duty and responsibility of John Doe Officers 1-10 to treat all persons in compliance with constitutional and statutory requirements and in compliance with VPD's rules, regulations, policies and procedures, customs and/or practices. The John Doe Officers are sued in their individual capacities.  The John Doe Officers will be identified in the initial disclosures and through discovery and the Plaintiffs will seek to amend their complaint to add their identities.

10.     Where appropriate, Defendants Arena, Mancuso, Scarborough and John Doe Officers 1-10 are referred to collectively as "Defendant Officers."

## III.

## JURISDICTION AND VENUE

11.     42 U.S.C. §1983 and 42 U.S.C. §1988 provide jurisdiction over Plaintiff's constitutional claims for redress, which are conferred on this Court by 28 U.S.C. §1343(a)(3).

12.     Federal question jurisdiction is conferred on this Court by 28 U.S.C. §1331, because this action arises under the Constitution and laws of the United States.

13.     This Court also has pendant jurisdiction over all other claims asserted under the laws of the State of New Jersey, pursuant to 28 U.S.C. §1367(a).

14.     Venue is proper in the District of New Jersey, as this is the district where the claim arose in accordance with 28 U.S.C. §1391(b).

---

[3]  The claims against John Doe Defendants are necessary since the New Jersey Attorney General's Office and VPD have continuously refused to provide any documents to the Plaintiff via multiple requests.

## IV.

## <u>DUTY AND LAW APPLICABLE</u>

15.     Johnson was subjected to excessive and deadly force, a violation of his rights guaranteed to him by the Fourth Amendment of the United States Constitution.

16.     Plaintiff commences this action pursuant to 42 U.S.C. §1983, which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

17.     The Defendant Officers were acting under the color of law and are liable under 42 U.S.C. § 1983 for conspiring their excessive and deadly acts towards Johnson.

## V.

## <u>FACTS</u>

### <u>Johnson's Fatal Encounter with the Defendant Officers</u>

18.     On August 6, 2020, a 911 call brought the police to the scene on an open road near West End Avenue in Ventnor, New Jersey where Johnson was located.   Parts of the encounter, before Johnson was shot and killed by the Defendant Officers, were captured on police body cameras as outlined in the paragraphs below.

19.     An individual in a United States Postal Service truck (Witness #1) told VPD officer Michael Arena, the first officer on the scene, that Johnson had been walking on the road in traffic.  Witness #1 stated that Johnson said someone tried to stab him and Witness #1 also told the officer that he had observed that Johnson was bleeding from the neck.

20.     As Arena approached, Johnson was not walking in the road, rather he was on the side of the road in the grass.  Defendant Arena asked Johnson if he was all right a couple of times. Johnson said no. Arena came within approximately twenty feet of Johnson at this time.

21.     As other officers arrived, Arena and other officers repeatedly gave Johnson commands.  Arena told Johnson that they were going to get him help.  Johnson said he did not want help and stated that he was in pain.

22.     At one point, Johnson asked for a bottle of water.  An officer tossed him a bottle which he drank.  Johnson never brandished the broken bottle piece he allegedly had on his person, nor did he ever threaten anyone.  Johnson did not have a gun or any other weapon.  He only repeatedly threatened to hurt himself.

23.     At some point, VPD called for the Atlantic City Police Department ("ACPD") to come to the scene for back up. ACPD officers arrived at the scene, including a supervisor who spoke to Johnson.

24.     One of the ACPD officers asked if VPD had attempted to tase Johnson.  VPD officers indicated that they did not have tasers.

25.     An ACPD officer tried to tase Johnson but the taser did not work. The officer can be overhead on one of the body camera videos stating that he could not believe the taser malfunctioned.  No other officer attempted to tase Johnson.  VPD officers did not have tasers and had not been trained to use them.

26.     Officers also discussed having a negotiator come to the scene but that did not happen either nor did the Defendant Officers summon a mental health professional to the scene.

27.     VPD officers asked ACPD officers whether they had a canine that they could bring to the scene, which was another appropriate less than lethal method of stopping Johnson from hurting himself.  However, no canine ever arrived.

28.     VPD Officers did not successfully attempt any less than lethal methods that they deemed appropriate for the circumstances involving Johnson because they did not have the resources, including tasers.

29.     Although Officers told Johnson that they did not want to hurt him, they made certain preparations to shoot Johnson such as pushing Johnson one way so that they would have a clear shot.

30.     There were times when Johnson walked towards the officers, times when he was in the street and other times when he was on the grass.  After about ten minutes, while Johnson was still walking, rather than use less than lethal means to subdue him, Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, all opened fire on an unarmed Johnson.

31.     After numerous shots were fired at Johnson by Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, for no lawful reason, Johnson fell to the ground, and was clearly experiencing excruciating pain.  An ambulance was finally called to the scene. Johnson was later pronounced dead.

## THE CITY'S POLICIES, CUSTOMS AND PRACTICES

32.     Based on the evidence, Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, fired multiple shots at Johnson after failing to use less than lethal methods and not receiving proper training to deal with mentally ill citizens.

PLAINTIFF'S ORIGINAL COMPLAINT – Page 9

33.     Contrary to their statements to investigators, Defendants Arena, Mancuso and Scarborough, and the John Doe Officers were not facing or reacting to an imminent threat of death or serious bodily injury to them or any other person at the time they fired at Johnson.

34.     Although Johnson was walking, not charging as alleged, towards police officers and there was a civilian car present, he did not have a firearm or knife and did make any movements that would indicate he was reaching for one.  The police officers and the civilians had automobiles and police cars for cover to the extent that it was needed.  Rather than taking cover and asking another ACPD officer to tase Johnson, Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers chose to use deadly force, violating applicable use of force policies.

35.     This horrible tragedy was 100% preventable and only occurred because of the Defendant Officers' failure to act in an objectively reasonable manner.

36.     Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, unlawfully shot and killed Johnson although they were not in imminent danger and less-lethal alternatives were available.

37.     Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, failed to conduct an objectively, reasonable assessment of the facts when they chose to shoot at Johnson.

38.     Despite the unlawful fatal shooting of Johnson none of the Defendant Officers have been terminated.  Upon information and belief, none of the Defendant Officers were ever disciplined or required to attend any additional training.

39.     The actions of Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, tragically took Johnson's life and are the logical and unconstitutional consequence of VPD's odious and illegal pattern, practice, custom, and de facto policies of using unreasonable and unjustifiable force on suspects who have mental illnesses or fail to obey commands.

40.     VPD did not provide adequate training to Officers Arena, Mancuso and Scarborough, and the John Doe Officers, on proper de-escalation procedures and techniques; nor were the officers provided with the resources and training needed to engage in less than lethal force (e.g., taser guns and canines) and to deal with citizens with mental illnesses.

41.     VPD did not provide adequate training to Defendants Arena, Mancuso and Scarborough, and the John Doe Officers on appropriate methods and techniques to control situations similar to the one encountered by them and other responding officers on August 6, 2020.

42.     Ventnor City Mayor and Commissioners, the City's final policymakers, then Chief Biagi and the City knew or should have known that the training provided to Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, was inadequate or nonexistent.

43.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers' unlawful and unwarranted acts, lack of training and the official customs or policies of VPD were the proximate causes of Johnson's death.  The City ratified the wrongful acts of the Defendant Officers.

44.     At all times material hereto, the Defendant Officers were believed to be acting in the scope of their employment as agents, servants, and employees of VPD, a part of Defendant City within its executive branch, and were performing a governmental function.

45.     Moreover, no reasonably competent officer would have concluded that the actions of Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, described herein would not, and did not, violate Johnson's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that the Defendant Officers' conduct was justified.

46.     Defendant City and VPD have a longstanding record of not providing VPD officers with adequate training, adequate supervision, or discipline, not preventing excessive force and extrajudicial killings by VPD officers and ratifying the wrongful conduct of officers. Chief Biagi knew that there were training issues which resulted in the killing of Johnson.  The Defendant Officers' inadequate training and the unconstitutional use of force policy were a moving cause in the death of Johnson.  Despite the number of internal affairs complaints lodged against police officers for misconduct, VPD and ACPD continue to cover-up bad acts and ratify the actions of its police officers as it now attempts to do with this case.

47.     The internal affairs section of VPD have received hundreds of complaints involving the use of excessive force by police officers rarely taking any disciplinary action against the officers, including the shooting death of Johnson.  This has resulted in a failure to supervise, discipline, counsel, or otherwise control police officers who are known or should be known to engage in the use of excessive force.  The police officers knew at the time they acted that their use of excessive and/or deadly force in conscious disregard of the rights and safety of

innocent third parties would meet with the approval of City Policymakers. The Defendant Officers are a part of a police code of silence wherein other officers and supervisors habitually cover[ed] up the use of excessive force by fabricating accounts to the media and in official reports and internal affairs investigations. That is exactly what happened with the shooting death of Johnson.

48.     The problems in VPD's Internal Affairs in particular run more than policy deep. Internal Affairs' gut reaction to most complaints is to protect fellow officers and to disbelieve and attack the credibility of complainants. The frequent use of deadly force by the Defendant Officers appears to establish a pattern or practice of resorting to deadly force more often than other New Jersey cities of similar size.

49.     The Defendant Officers' unlawful and unwarranted acts, lack of training and the official customs or policies of VPD caused Johnson's wrongful death.

50.     Plaintiff would also show that at all times material hereto, the Defendant Officers were acting under the color of law when they shot and killed Johnson.

51.     Plaintiff would further show that the Defendant Officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of VPD in regard to the use of deadly force. The City and the Policymakers, specifically, then Chief Biagi knew or should have known but never provided the requisite and proper training.

52.     Moreover, no reasonably competent official would have concluded that the actions of the Defendant Officers described herein would not violate Johnson's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers' conduct was justified nor was the treatment of Johnson, reasonable.

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 13

53.     Rather than implement policies and procedures to curtail death and/or injuries that result from the improper use of deadly force, VPD's written policies on the use of force promote the unconstitutional use of deadly force. Moreover, VPD has not disciplined officers like Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers for using unconstitutional degrees of force.

54.     As a direct and proximate result of the Defendants' conduct, Plaintiff has sustained substantial damages and pecuniary loss.

55.     As a direct and proximate result of Defendants Arena, Mancuso and Scarborough, and the John Doe Officers' conduct, the Plaintiff has sustained substantial damages and pecuniary loss.

56.     Johnson was thirty (30) years old when Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, murdered him.  He was in good health, with a reasonable life expectancy of living at least 50 more years to age 80.  Johnson leaves behind his minor son.

57.     The Plaintiff has suffered pecuniary loss from the death of his father by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness.  The Plaintiff will suffer anguish, grief, and sorrow as a result of Johnson's death and is likely to continue to suffer for a long time in the future. The closeness of Plaintiff's relationship with Johnson is demonstrated in many ways including the time they spent together, and the things Johnson did for his minor son. For these losses, the Plaintiff seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

58.     Upon information and belief, VPD has not implemented policies and procedures to aggressively curtail death and/or injuries as a result of the improper use of deadly force or to train officers for dealing with citizens with possible mental illnesses and has not disciplined the Defendant Officers who were involved in the unlawful shooting death.

## VI.

## CAUSES OF ACTION

**First Cause of Action**
**Unconstitutional Use of Excessive Force**
**42 U.S.C. § 1983 Violation of the Fourth Amendment**
**by Defendants Arena, Mancuso, Scarborough and John Doe Officers**

59.     Plaintiff hereby adopts, incorporates, re-states and re-alleges paragraphs 1 through 58, inclusive, with regard to all causes of action.

60.     Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, acting under color of law, used unreasonably excessive and deadly force when they fired upon and killed Johnson for no lawful reason. The Defendant Officers discussed more than one less than lethal method but failed to implement any of them.   Johnson had not threatened to do harm to the officers or anyone else.   At no time did Johnson lunge at the officers or make any gestures that made it appear as he was attempting to harm the officers.

61.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers' actions violated Johnson's constitutional rights giving rise to Plaintiffs claims pursuant to the Fourth Amendment and 42 U.S.C. §1983 and other applicable law.

62.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, violated Johnson's constitutional rights to be free from excessive and deadly force. This right was clearly established at the time of the shooting.

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 15

63.      Defendants Arena, Mancuso and Scarborough, and the John Doe Officers'
actions were not objectively reasonable because Johnson did not pose an immediate risk of
serious physical harm to any officers or any other person.

64.      The force used by Defendants Arena, Mancuso and Scarborough, and the John
Doe Officers was objectively unnecessary, excessive, and unreasonable under the circumstances,
as Johnson did not pose an immediate threat to the safety of Defendants Arena, Mancuso and
Scarborough or others and the use of such excessive and deadly force was unnecessary. Rather,
Defendants Arena, Mancuso and Scarborough, and the John Doe Officers embarked on a willful,
malicious, reckless, and outrageous course of conduct that was intended to cause and, in fact,
caused Johnson to suffer extreme and severe mental and emotional distress, agony and anxiety.

65.      Further, Defendants Arena, Mancuso and Scarborough, and the John Doe
Officers' conduct violated a clearly established constitutional right—the right to be free from
excessive force—that was established well before Defendants Arena, Mancuso and Scarborough,
and the John Doe Officers shot and killed Johnson. *See, e.g., Peroza-Benitez v. Smith*, 994 F.3d
157, 166 n.4 (3d Cir. 2021) (*citing Tennessee v. Garner,* 471 U.S. 1, 3, 105 S.Ct. 1694, 85
L.Ed.2d 1 (1985) ("deadly force may not be used unless it is necessary to prevent…escape and
the officer has probable cause to believe that the suspect poses a significant threat of death or
serious physical injury to the officer or others."). In *Kelley v. O'Malley*, the conduct of police
officers found to be objectively unreasonable where, among other factors, the police shooting
victim was holding a knife but was cornered and vastly outnumbered by armed officers. No. 18-
3283, 3rd Cir. (Sept. 24, 2019). Nevertheless, a right may be "clearly established" even without
a "precise factual correspondence between the case at issue and a previous case." *Kopec v. Tate*,
361 F.3d 772, 778 (3d Cir. 2004).

66.     As a result of these Constitutional violations to Johnson, Plaintiff seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

**Second Cause of Action**
**Ventnor City's Failure to Adopt a Needed Policy and**
**Failure to Train and Adequately Supervise or Discipline**
**42 U.S.C. § 1983 Violation of the Fourth Amendment**

67.     Plaintiff hereby adopts, incorporates, re-states, and re-alleges paragraphs 1 through 66.

68.     The City is liable for all damages suffered by the Plaintiff pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) and 42 U.S.C. § 1983, based on an official policy or custom of the Ventnor Police Department of which the Policymakers all had actual or constructive knowledge that was a moving force behind the constitutional violations alleged herein.

    **1.**    **The City's written policies on the use of force are facially unconstitutional and were a moving force behind violating Johnson's constitutional right to be free from excessive force.**

69.     The Plaintiff incorporates paragraphs 1 through 68 as if fully set forth herein. Prior to the incident, the City and its Policymakers knew of the excessive use of force being used by VPD police officers but did nothing to curtail it.

70.     VPD policies on the use of force instruct officers that the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation and that officers may even use deadly force when no immediate threat of harm actually exists. Because both policies directly contradict what the United States Supreme Court has determined are the

constitutional limits of the use of force, the policies on the use of force are facially unconstitutional.

71.     Deadly force is not justified where the suspect does not pose a "live threat" to the officers in question. *Peroza-Benitez*, 994 F.2d at 171 n.7.   The United States Supreme Court has not interpreted the constitution to justify using deadly force when the officer simply believes that a threat exists, even if the belief is reasonable. Thus, unless the suspect <u>actually poses</u> an <u>immediate</u> threat, the officer's <u>belief</u> that a suspect posed a threat alone does not justify using deadly force. A policy that instructs officers that they may use deadly force when they reasonably believe a threat exists, regardless of whether the threat actually exists and regardless of whether the threat is immediate, violates the constitutional limits on the use of force.

72.     Furthermore, the United States Supreme Court has concluded that the objective "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene"—not based on the particular officer's subjective evaluations. *Graham*, 490 U.S. at 396. Thus, in determining what degree of force is appropriate, officers may not consider subjective criteria, such as their own age, size, strength, skill level with department weapons, or state of health. A policy that defines "objective reasonableness" to include such subjective criteria, therefore, violates the constitutional limits on the use of force.

73.     Policies that ignore the United States Supreme Court's interpretation of the Constitution are facially unconstitutional. *See Monell*, 436 U.S. 658.   VPD policies on the use of force instruct officers that the degree of non-deadly force is objectively reasonable even when based on the officers' subjective evaluation and that officers may even use deadly force when no immediate threat of harm actually exists. Because both policies directly contradict what the

United States Supreme Court has determined are the constitutional limits of the use of force, the policies on the use of force are facially unconstitutional.

74.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, acted on the City's facially unconstitutional polices on the use of force when they used excessive deadly force against Johnson, causing Johnson's death. Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, were unjustified in using deadly force against Johnson because he did not pose any actual, immediate threat to officers or others. Shooting Johnson on nothing more than Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers' subjective perception of danger—as VPD's use of force policies unconstitutionally instruct officers they may—was objectively unreasonable and violated the Fourth Amendment right of Johnson. Therefore, VPD's use-of-force policies were moving forces behind Plaintiffs' constitutional injuries.

**2.      The City failed to train its officers on the proper use of force, including deadly force.**

75.     Plaintiffs incorporate by reference paragraphs 1 through 74 as if fully set forth herein.  Prior to August 6, 2020, the Policymakers knew or should have known that Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, exhibited a pattern of escalating encounters with the public.

76.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers were acting under the color of law and acting pursuant to customs, practices and policies of the City and VPD in regards to the use of deadly force as authorized and/or ratified by the Policymakers when they deprived Johnson of rights and privileges secured to him by the Fourth Amendment to the United States Constitution and by other laws of the United States, by the City failing to

provide proper training in the use of deadly in violation of 42 U.S.C. § 1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

77.     With respect to the claims made the basis of this lawsuit, the City and VPD failed to adequately train, supervise or discipline its employees regarding the unnecessary use of deadly force. The failure to train, supervise or discipline its employees in a relevant respect reflects a deliberate indifference to the City and then Chief Biagi to the rights of the City's inhabitants and is actionable under 42 U.S.C. § 1983.

78.     Defendant City, VPD, and Chief Biagi under the direction of the Commissioners developed and maintained a policy of deficient training of its police force in the use of force, including the use of deadly force in the apprehension and the wrongful detention of individuals. The City's training was designed and implemented by then Chief Biagi to act in this regard.

79.     The City and then Chief Biagi's failure to provide adequate training to its police officers regarding the use of deadly force and wrongful arrest/detentions reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Johnson's constitutional rights, including Johnson's death, a reasonable probability.

80.     Plaintiff would show that Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the City, Commissioners and then Chief Biagi knew or should have known but never provided the requisite and proper training.

81.     On information and belief, Defendant the City, VPD, Commissioners and then Chief Biagi, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Johnson, failed to implement and/or

enforce the policies, procedures, and practices necessary to provide constitutionally adequate protection and assistance to Johnson during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Johnson from receiving the protection, assistance and care he deserved.

82.    For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Johnson's constitutional rights:

(a)    The inadequacy of VPD policies, training, supervision, or discipline relating to the use of deadly force;

(b)    The inadequacy of VPD's policies, training, supervision, or discipline relating to the use of non-lethal control devices and tactics and the failure to provide non-lethal options;

(c)    The adoption of completely subjective continuum of force policies that can be expressly avoided, and which leaves the use of deadly force exclusively to the unchecked discretion of officers on the scene;

(d)    The adoption of a policy that allows officers to use the degree of force that the officer feels brings the situation quickly under control as per his or her individual judgment even if that method is deadly force;

(e)    Lack of training regarding effective communication with citizens while giving them commands and determining their compliance; and

(f)    Using excessive and/or deadly force against Johnson although he caused no immediate threat.

83.    In addition, Defendant City, as applicable, failed and refused to implement customs, policies, practices, or procedures, and failed to train its personnel adequately on the appropriate policies, practices, or procedures regarding the use of deadly force and the wrongful detention of individuals. In so doing, Defendant City knew that it was acting against the clear dictates of current law and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Johnson's death-- in all reasonable probability would occur.

84.     The City's failure to properly train, supervise and discipline its police officers regarding the use of force was the proximate cause of the violations of Johnson's constitutional rights including the unnecessary taking of Johnson's life.

**3.     The City failed to adequately supervise or discipline its officers for violent, aggressive, excessive force and wrongful arrest and detention and, in failing to do so, ratified and encouraged the conduct of its officers, including the Defendant Officers and the John Doe Officers.**

85.     Plaintiffs incorporate by reference paragraphs 1 through 84 as if fully set forth herein.

86.     On Plaintiff's governmental liability claim against the City for failing to supervise and/or discipline its officers for prior violations and the resulting lack of supervision:

(a)     the City and then Chief Biagi failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

(b)     the City and then Chief Biagi were deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately;

(c)     the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Johnson's constitutional rights; and

(d)     the City and then Chief Biagi failed to adequately supervise and/or discipline Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, for shooting Johnson for no lawful reason, resulting in the death of Johnson.

87.     Despite having knowledge of Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers' violation of VPD's policies and other best police practices as described above, the City, the Commissioners and then Chief Biagi refused to adequately discipline Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers. The City's Policymakers were aware of the out-of-control behavior of Defendants Arena, Mancuso and Scarborough, and the John Doe Officers but failed to take any actions. The City's failure to adequately supervise and/or discipline its officers was therefore the moving force behind

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 22

Plaintiffs' damages.

88.     Ventnor City and VPD, by and through the Ventnor City Mayor and Commissioners and then Chief Biagi, have failed to adopt needed policies and/or have inadequate policies of training officers regarding the following areas of law enforcement:

(a)     The use of deadly force.

(b)     The provision of and proper use of non-lethal methods.

(c)     Proper de-escalation techniques.

(d)     Interacting with citizens who may be mentally ill.

89.     Defendant Officers and other officers at the scene of the shooting incident were acting under the color of law and acting pursuant to customs, practices, and policies of Ventnor City and VPD in regard to the use of deadly force as authorized and/or ratified by the Ventnor City Mayor and Commissioners and then Chief Biagi.  Johnson was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by Ventnor City failing to adopt needed policies providing for the use of less-lethal means and for dealing with citizens who may be mentally ill.  Ventnor City also failed to provide proper training, adequate supervision, or discipline in dealing with individuals such as Johnson in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

90.     Ventnor City's policy of inadequate and improper training of police officers on proper use of deadly force and on dealing with citizens who are demonstrating signs of mental illness, in addition to the failure to adopt a policy providing for less-lethal alternatives, resulted in the constitutional deprivations and damages alleged herein.

**PLAINTIFF'S ORIGINAL COMPLAINT** – Page 23

91.     Ventnor City and VPD failed to adequately train and failed to adequately supervise or discipline the Defendant Officers, despite their unlawful conduct.

92.     The Defendant Officers lack of training and failure to adopt a policy providing for less-lethal means led to the use of excessive and deadly force and, ultimately, their killing of Johnson.

93.     VPD has not provided the Defendant Officers with adequate training on de-escalation techniques intended to prevent instances of excessive and deadly force and extrajudicial killings by Defendant Officers.

94.     As noted above, Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, used excessive and deadly force for no lawful reason when they shot at and killed Johnson.

95.     Defendants Arena, Mancuso and Scarborough, and the John Doe Officers' unlawful and unwarranted acts, failure to adopt needed policies, lack of training, and the official customs or policies of the relevant police departments, caused Johnson's wrongful death.

96.     Plaintiff would show that at all times material hereto, Defendants Arena, Mancuso and Scarborough, and the John Doe Officers were acting individually and/or in the scope of their employment as agents, servants, and employees of the VPD were performing a governmental function.

97.     Plaintiff would further show that Defendants Arena, Mancuso and Scarborough, and the John Doe Officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures of the VPD in regards to the use of deadly

force for which the Ventnor City Mayor and Commissioners, and then Chief Biagi, knew or should have known, but never provided the requisite and proper training.

98.    Moreover, no reasonably competent official would have concluded that the actions of Defendants Arena, Mancuso and Scarborough, and the John Doe Officers described herein would not violate Johnson's constitutional rights. In other words, no reasonably prudent police officer under similar circumstances, could have believed that Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, conduct was justified.

99.    As a direct and proximate result of Defendants' conduct, the Plaintiff has sustained substantial damages and pecuniary loss.

100.    As a direct cause and result of the constitutional violations as set forth herein, Johnson incurred extreme pain, injuries and, ultimately, death for which the Plaintiff seeks compensation, as set forth more specifically in the section of this Complaint entitled "Damages."

## VII.
## DAMAGES

101.    **Actual damages.** Plaintiff incorporates by reference paragraphs 1 through 100 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause and the moving force behind the following actual damages suffered by the Plaintiff and Defendants should be held jointly and severally liable for the following damages:

  (a) **Estate of Amir Johnson (Survival Claim).**

    1. Conscious pain and mental anguish suffered by Amir Johnson prior to his death; and
    2. Funeral and burial expenses.
    3. Loss of value of life.
    4. Exemplary Damages.

**(b) M.J., and the statutory beneficiaries (as wrongful death beneficiaries of Amir Johnson).**

1. Mental anguish—the emotional pain, torment, and suffering experienced by M.J. and the statutory beneficiaries because of the death of Amir Johnson—that M.J. and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;

2. Loss of companionship and society—the loss of the positive benefits flowing from the love, comfort, companionship, and society that M.J. and the statutory beneficiaries would have received from Amir Johnson had he lived—that M.J. and the statutory beneficiaries sustained in the past and that they will, in reasonable probability, sustain in the future;

3. Pecuniary loss—loss of the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that M.J. and the statutory beneficiaries would have received from Amir Johnson had he lived—that M.J. and the statutory beneficiaries sustained in the past and that they will, in reasonable probability will sustain in the future.

102.   **Punitive/Exemplary Damages against Defendants Arena, Mancuso, and Scarborough and John Doe Officers.**   Punitive/exemplary damages are recoverable under section 1983 when the conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.  Here, the conduct of Defendants Arena, Mancuso and Scarborough, and the John Doe Officers, was done with evil motive or intent, or at the very least, was reckless or callously indifferent to the federally protected rights of the Plaintiff.  As such, Plaintiff requests punitive and exemplary damages from Defendants Arena, Mancuso, and Scarborough, and the John Doe Officers, to deter this type of conduct in the future.

103.   Prejudgment and post judgment interest.

104.   Costs of court.

105.   Reasonable and necessary attorney's fees incurred by the Plaintiff through trial, and reasonable and necessary attorney's fees that may be incurred by Plaintiff for any post-trial

proceedings, or appeal, interlocutory or otherwise, pursuant to 42 U.S.C. § 1988.

106.    Plaintiff seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## VIII.

## CONDITIONS PRECEDENT

107.    Plaintiff reserves their rights to plead and prove the damages to which they are entitled to at the time of trial.  All conditions to Plaintiff's recovery have been performed or have occurred.

## XI.

## TRIAL BY JURY

108.    Plaintiff has paid a jury fee and demands trial by jury.

## X.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiff have and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiff is justly entitled.

Respectfully submitted,


By: /s/ DARYL K. WASHINGTON
    Daryl K. Washington
    WASHINGTON LAW FIRM, PC
    325 N. St. Paul St., Suite 3950
    Dallas, New Jersey 75201
    214-880-4883
    214-751-6685 - fax
    Email: dwashington@dwashlawfirm.com
    (Filing for *Pro Hac Vice* Admission)


By: /s/ SHERYL R. WOOD
    Sheryl R. Wood
    THE WOOD LAW FIRM, PLLC
    1629 K St, NW, Suite 300
    Washington, DC 20006
    202-466-0986
    202-866-0986 – fax
    Email: sw@thewoodlawfirm.com
    (Filing for *Pro Hac Vice* Admission)


By: /s/ RAYMOND L. HAMLIN
    RAYMOND L. HAMLIN
    HUNT, HAMLIN & RIDLEY
    THE MILITARY PARK BUILDING
    60 PARK PLACE – 16TH FLOOR
    NEWARK, NEW JERSEY  07102
    973-242-4471
    973-242-8295 – fax
    Email: ray.hamlin@hunthamlinridley.com


**ATTORNEYS FOR PLAINTIFFS**